ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY v. STATE.

Opinion delivered October 4, 1915.

1. CONSTITUTIONAL LAW—CORPORATIONS—"CITIZENS."—A corporation is not a "citizen" within § 2, Art. 4, Constitution of the United States, nor § 18, Art. 2, Constitution of Arkansas.

2. WORDS AND PHRASES—"CITIZEN."—"Citizen" ordinarily means only a natural person, and will not be construed to include a corporation unless the general purpose and import of the statute, in which the term is found seem to require it.

3. RAILROAD COMMISSION—ORDERS—PETITION—SIGNATURES.—Section 1, Act 149, Acts 1907, covering petitions for depots, train service, etc., provides that the petition shall be signed by at least fifteen *bona fide* citizens residing in the territory sought to be affected by said petition. *Held*, corporations and co-partnerships are not citizens within the terms of the act.

Appeal from Washington Circuit Court; *J. S. Maples*, Judge; reversed.

*W. F. Evans* and *B. R. Davidson*, for appellant.

1. The Railroad Commission was without authority to enact the Order No. 3085 because there was no petition, signed by fifteen or more *bona fide* citizens residing in the territory to be affected by the order, upon which to base such order. Acts 1907, p. 356, § 1.

The words "bona fide citizen" as used in the statute mean a natural person. 2 Words & Phrases, 1164-69; 63 Ark. 543; 7 Cyc. 133.

2. No authority is given by the act to the Railroad Commission to compel two railroad companies to make a contract and construct a joint track either on the right-of-way of one or both or upon intervening land owned by one else. Acts 1907, p. 356, § 1.

3. An order of this character is not effective unless the Railroad Commissioners file their findings and decree with the Secretary of State, Attorney General and circuit clerk of the county wherein such decree is granted, and serve notice upon the defendant railroad company by delivering a copy thereof to the nearest local agent, and *by sending by registered mail* a copy to the superintendent, general manager, lessee or operator of said railroad. *Id.*, § 3. No such order was served upon the local agent, nor copy filed with the circuit clerk, and the alleged service upon the superintendent by copy thereof deposited in a mail box on the street, does not conform to the statute. The service must be in the manner indicated in the statute, and must be proved by sworn testimony. Kirby's Dig., § 6267; 82 Ark. 175; 68 Ark. 238.

4. The order was made after the property had been placed in charge of the United States Court, and was being operated by receivers, who were not made parties to the notice or to the order. They were in no way bound by the order. The entire property being in the hands of the court, the Railroad Commissioners were without authority to make the order. 15 Ark. 555, 608; 74 Ark. 292; High on Receivers, 3 § 1; *Id.*, § 290; 14 How. 65; 149 U. S. 181; 150 U. S. 637; 34 Cyc. 719; 41 Atl. 1097; Beach on Receivers, § § 194, 496.

5. The court erred in admitting evidence to the effect that the defendant company had refused to receive and exchange cars with the other company. Such evidence was not relevant to the issue. Moreover the railroad company was not responsible for the refusal of the receivers to receive and switch cars. 33 Cyc. 690.

6.   Since the defendant company had about twenty industries which had been located and maintained at great expense upon its track while the other company had only one or two of small consequence, the order would effect a great injustice upon the defendant company, besides being unreasonable.   Art. 12, sec. 6, Const.; 85 Ark. 18.

7.   The commission had no authority to require two companies to enter into a contract to construct a connecting track, and certainly not where one of the companies is in the hands of receivers.   192 U. S. 568; 202 U. S. 543; 226 U. S. 14; 26 I. C. C. Rep. 240; 28 *Id.* 621, 626; 212 U. S. 132.

The Railroad Commission of the State has no power to regulate or in any way control interstate shipments, or to prescribe the manner in which they shall be received or delivered.   *Supra;* 226 U. S. 426, 435.   There is no duty resting upon the appellant company to receive from its competitor cars at the point of connection and to switch them to industries located upon the line of appellant.   To require it to do so would be the taking of appellant's property without due process of law and without compensation, in violation of the Constitution of the United States.   212 U. S. 132, 144; 28 I. C. C. 621, 626.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1.   Sixteen firms and one individual, in the territory affected by the proceeding, signed the petition.   The statute is directory merely, and a substantial compliance with it is sufficient.

2.   The Railroad Commission had authority to make the order, under section 1 of Act 130, Acts 1903.

3.   The order was properly served.   The circuit court's finding upon that disputed question of fact, has the force of a jury's verdict, and will not be disturbed.

4.   The fact that the Railroad Company was in the hands of receivers, did not relieve it from the duty to obey the order of the Railroad Commission.   115 Ill. 54; 97 Ark. 473, 475; 113 Ark. 384, 397; 72 Ark. 252, 253.

5. The Commission is merely exercising the power delegated to it by the Legislature. The State had the right to require the establishment and maintenance of the interchange track, without thereby violating rights secured by the Constitution of the United States. 236 U. S. 615.

Every presumption must be indulged in favor of the commissioner's action, and it is only where such action is arbitrary and unjust that the courts will interfere. 147 Pac. (Wash.) 885.

SMITH, J. An information was filed before a justice of the peace of Washington County in which it was charged that the appellant railroad company had failed and refused to comply with Order No. 3085 of the Railroad Commission of Arkansas, which said order required appellant to establish and maintain a joint interchange track at Fayetteville with the Kansas City & Memphis Railroad Company, and to do switching thereon. Judgment was rendered by default in the justice court, and an appeal was prosecuted to the circuit court, in which court a demurrer and an answer were filed. Various grounds of defense were set up in the answer which we need not consider here, but, among other defenses, it was alleged that the order of the Railroad Commission upon which the prosecution was based, was void for the reason that no petition for such order signed by fifteen *bona fide* citizens residing within the territory affected by the petition was ever filed, and as we agree with appellant in this contention we have found it unnecessary to consider any of the other defenses set out in the answer.

Appellant's demurrer was overruled, but, upon the trial before the court sitting as a jury, considerable evidence was offered, at the conclusion of which the court found appellant guilty as charged, and this appeal is prosecuted from the judgment of the court imposing a fine against appellant.

It is conceded by counsel for the State that, although there are eighteen names signed to the petition, all these signers are corporations and co-partnerships except one,

but it is argued that the provisions of the statute in regard to the number of signers is directory, and that the statute was substantially complied with when fifteen names of individuals, corporations and co-partnerships were signed to the petition.

Section 1 of Act 149 of the Acts of 1907, under which the Railroad Commission proceeded in making the order in question, provides that the commission shall be empowered to hear and consider all petitions for train service, depots, stations, spurs, sidetracks, platforms, and the establishment, enlargement, equipment, and discontinuance of the same upon the right-of-way of any railroad in this State, *provided,* said petitions shall be signed by at least fifteen *bona fide* citizens residing in the territory sought to be affected by said petitions.

In the case of *St. Louis, I. M. & S. R. Co.* v. *Bellamy,* 113 Ark. 384, it was decided that a petition " 'signed by at least fifteen *bona fide* citizens residing within the territory sought to be affected by said petition' is essential to give the commission jurisdiction'' to act upon the matters mentioned in the act quoted from.

(1)    It has been many times decided that a corporation is not a citizen within the meaning of the equal privileges and immunities clause of the Federal Constitution, and this court has decided that section 18, article 2, of the Constitution of this State, containing the same provisions as those of the Federal Constitution, does not apply to corporations. *C. R. I. & P. R. Co.* v. *State,* 86 Ark. 423.    And while it is held that corporations are persons within the meaning of the Fourteenth Amendment to the Federal Constitution, which provides that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law, it has been as often decided that corporations are not included in that portion of the same amendment which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.    A number of the cases so holding are

cited in the opinion of this court in the case of *Chicago, R. I. & P. R. Co.* v. *State, supra.*

(2)   A number of definitions of the word "citizen" are found in volume 1 of Words & Phrases, and we quote the following definitions there given:

" 'Citizen' ordinarily means only a natural person, and will not be construed to include a corporation unless the general purpose and import of the statute in which the term is found seem to require it. *International & Life Assr. Co.* v. *Haight,* 35 N. J. Law (6 Vroom) 279, 282."

(3)   In the case of *School Dist. No. 11* v. *School Dist. No. 20,* 63 Ark. 543, the court considered the meaning of the word "citizen" as employed in the statute authorizing petitions for change of boundaries of school districts. The court, through Bunn, C. J., said that, from the common understanding of the meaning of the word "citizen," and from the fact that some other word than "citizen" is employed in the statutes authorizing these changes, whenever persons other than electors were included, the word "citizen," as there used, meant an "elector."

It is not customary to speak of corporations or of copartnerships as *residing* in a particular locality. They must, of course, have their situs, or, as is sometimes said, their "domicile" in a particular locality, but it would not be said that they were residents of that locality.

Moreover, the use of the qualifying words *bona fide* is significant. Evidently the Legislature did not intend to burden the Railroad Commission with the consideration of petitions, for the things authorized to be petitioned for, unless at least fifteen *bona fide* citizens residing in the locality to be affected were sufficiently interested to petition therefor. It is no doubt true that a corporation or a copartnership might be interested and greatly benefited by relief such as was prayed for in the petition in question, but these are questions which the Legislature apparently has left for the action of "citizens residing in the locality to be affected," which language we construe to mean permanent residents as distinguished from mere so-

journers, and as excluding corporations and co-partnerships and including only individuals.

If corporations or companies were taken into account, the question of the authority of the officers signing the names of such corporations or companies would arise where the statute did not provide what officers should sign for such companies or corporations.

The presumption is not to be indulged that petitions will be signed upon mere presentation, but, upon the contrary, the presumption of law must be that signers will not seek to put in motion the machinery of the law to require a railway company to grant the relief prayed until the signer has concluded that the relief prayed for should be granted. If the rule were otherwise, the requirement of a petition would be futile. For a corporation to exercise this function would require investigation and consideration by its directors and a conclusion to be reached by them. No mere stockholder or officer of a corporation upon his own initiative would have the right to declare the corporate will. Some other officer or stockholder might be of a contrary opinion, and to avoid this conflict a corporation, if authorized to act at all, would have to act in some manner permitted by statute. But the Legislature having made no provision by which the assent of a corporation might be evidenced, but, upon the contrary, having used language which in its ordinary acceptation would refer only to individuals, we have concluded that the petition was not signed as required by law, and that the Railroad Commission was, therefore, without jurisdiction to make the order upon which this prosecution is based, and the cause will, therefore, be reversed and dismissed.